## J. P. INMAN v. JONES CREEK DRAINAGE DIST. NO. 10.

Western Section.   June 3, 1927.

Petition for Certiorari denied by Supreme Court, December 17, 1927.

1. **Courts. Jurisdiction. Chancery court held to have jurisdiction over drainage district.**
    In an action by a contractor against a drainage district to require the directors to turn over $1000 worth of bonds in payment of a contract, held that the chancery court had jurisdiction of this action and the Chancellor could require the turning over of the bonds.

2. **Drains. Evidence. Contract for digging drainage ditch held substantially performed.**
    In an action by a contractor to recover certain bonds in payment of a contract for digging a drainage ditch held that the evidence showed a substantially complied with contract and the contractor was entitled to recover.

3. **Evidence. Parol proof held not to vary the terms of the contract.**
    In an action on a contract for digging a drainage ditch, where the contract did not state how the ditch was to be dug, and parol evidence was introduced to show the method the parties contemplated, held the evidence was not incompetent as varying the written instrument.

4. **Drains. Engineer held properly selected for drawing plans and specifications.**
    Under the Drainage Act, commissioners of a drainage district have authority to select an engineer to prepare plans and specifications for the digging of a drainage ditch and to superintend its construction.

Appeal from Chancery Court, Chester County; Hon. Tom C. Rye, Chancellor.

Affirmed.

Anderson & White of Jackson, and Galbraith & Mitchell, of Henderson, for appellant.

Ross & Ballew, of Savannah, for appellee.

OWEN, J.   The defendants have appealed from a decree of the chancery court of Chester county in favor of J. P. Inman for $1,000. The complainant filed his bill April 6, 1925, alleging that Jones Creek Drainage District and its directors had entered into a contract with him in December, 1923, in the sum of $6,000 wherein he was to cut a drainage canal along Jones creek in Chester county. The bill alleged that complainant was to be paid in the bonds of the district.   He had been paid $5,000 at the time of the filing of his bill.   He alleged that he had completed his contract and the bill sought a decree for the delivery of $1,000 in bonds of the drainage district, or, if the bonds were not on hand, that decree be rendered for the sum of $1,000, with interest.   The bill also prayed for an injunction against the defendant, enjoining them from disposing of the bonds they had on hand, and a writ of mandamus, requiring them to deliver to complainant the sum of $1,000 in payment of his services under the contract.   Writs of injunction and mandamus were issued as prayed for in the bill.

The defendant, Jones Creek Drainage District and its directors admitted the contract price for the completion of the canal, but they alleged that complainant had never completed the work in accordance with the contract, and that same had never been accepted.   It was alleged that it would be necessary for defendants to spend $1500 in order to complete the canal and that they had been damaged during the year 1925, by reason of said canal not being completed.

The defendants filed a cross-bill and sought to recover $2,000 as damages for breach of contract and sought permission to the court to use the proceeds of the $1,000 worth of bonds on hand to complete the contract, and that it have and recover of complainant whatever was necessary to complete the contract in accordance with its terms.

Complainant answered this cross-bill denying that the work was not accepted by the engineer of the drainage district and denying that the ditch was not completed in accordance with the terms of the contract, and setting up further an effort to arbitrate the matters in controversy, claiming he met the requirements of said agreement to arbitrate.   He denied that the defendants were damaged and entitled to recover against him for any amount.

It appears that a jury was called for but was waived, or treated as waived, and the cause was heard before the Chancellor upon oral testimony.

Counsel for appellants stated that: "The cause of action was heard on oral proof before the Chancellor without the intervention of a jury, and a decree was entered granting the relief sought in the bill and ordering the delivery to the complainants, being the drainage district, of $1,000 of its bonds."

There was no written agreement or stipulation to hear the case on oral testimony. The case was not heard under chap. 119 of the Acts of 1917. It seems to be conceded that the hearing of this case upon the appeal will be governed by the rule announced in Beatty v. Schneck, 127 Tenn., 663, 152 S. W., 103, and Choate v. Sewell, 142 Tenn., 487, 221 S. W., 190.

The defendants seasonably filed a motion for a new trial, which was overruled and disallowed, and judgment was pronounced in favor of the complainant as heretofore stated. The defendants excepted, prayed and were granted an appeal to this court; perfected the same, and have assigned twelve errors.

The first error is, that there was no evidence to support the judgment of the lower court.

The second and third assignments go to the preponderance of the evidence.

The fourth assignment raises the question of jurisdiction, and that is that the drainage law does not authorize suits against a drainage district, relying upon chapter 185 of the Acts of 1909 (carried in the Code, sec. 3871, and subsections).

The fifth, sixth, seventh and eighth assignments complain of the action of the court in ordering the defendants and T. C. Smith as chairman of the county court of Chester county and ex-officio member of the board of directors of said drainage district to deliver to the Clerk and Master for delivery to the complainant said bonds of $1,000.

The ninth assignment of error is as follows "The court erred in permitting parol proof to vary the terms of the written contract requiring the canal to be completed in accordance with the plans and specifications."

The tenth assignment complains of the court's action in overruling defendant's motion for a new trial because, under the law the board of directors have no authority to terminate the powers vested in them by law to an engineer.

The eleventh assignment is, that the court erred in overruling the defendant's motion for a new trial because the written reports of the two engineers show that the canal was not completed in accordance with the contract, plans and specifications; and the twelfth assignment is, the court erred in overruling defendant's motion for a new trial, because under the law delegating the power of the board of directors of the drainage district, to have the gen-

eral control and management of the business and affairs of the district, and supervision of the same, the said board had no authority under the law to delegate to the engineer the right to finally and conclusively accept the work done on the canal.

Jones Creek Drainage District No. 10, of Chester county, was established by the county court of Chester county as provided by the laws of the State of Tennessee. The defendant T. C. Smith was chairman of the county court of said county of Chester and ex-offiicio director of said drainage district. W. F. Pearce and John Philips were directors of said district. No question was made in the lower court as to jurisdiction.

We are of opinion that the chancery court had jurisdiction to require these directors to turn over the $1,000 worth of bonds in their possession, and complainant was entitled to the same under the contract—that is what the Chancellor ordered the defendants as directors to do. There is no judgment against the directors as individuals. It results that the fourth assignment of error is overruled.

When the contract was entered into between the complainant and the defendant drainage district through its directors, complainant was to cut the ditch mentioned in the specifications and profiles, as prepared by F. M. Patton, civil engineer of Jackson, Tennessee, for the sum of $6,000, to be paid in the bonds of said drainage district; that twenty per cent of the estimated work was to be withheld by the defendant, and eighty per cent was to be paid to the complainant as the work progressed. There was no provision as to the manner of cutting the ditch, but the proof shows that it was thoroughly understood by and between the complainant as the contractor and the defendant, that the work was to be done by dynamiting, or blasting. The width of the ditch was ten feet at the top, four feet at the bottom and a depth of six feet. The complainant was also to clean off the right-of-way for a width of fifty feet— twenty-five feet on each side of the center of the ditch, or twenty feet from each edge of same.

It appears that this ditch was dug during a very dry season and there was a scarcity of rainfall for sometime after complainant had finished his work. In blasting or dynamiting a ditch, the earth is loosened between the edges of the ditch. Some of the dirt is thrown out, and the loose dirt left in the ditch is to be washed out by rainfalls. It further appears that a large portion of this ditch was not six feet in depth, unless it was measured through the loose dirt called "muck." F. M. Patton, the engineer, was called on by the directors to make an inspection and report, when complainant was insisting that he had completed the ditch. Mr. Patton examined said ditch on February 6, 1925, at the request of defendants, and reported as follows:

"As a comment on the condition now, beg to say further, there is a bank of rolling sand about one half mile from upper end. this sand came in from the upper end, rolls lower down after each rain and will finally roll on out of the way. In my opinion the contractor is not responsible for this condition, and even if he were, the only thing to do is to wait until the sand rolls on out. I might further comment by saying that in my opinion the ditch in a year or so will be larger than desired, and one (of) the troubles is going to be to control the size. F. M. Patton, Engineer."

After this report the defendants refused to pay, until the complainant removed a number of stumps and logs that Engineer Patton reported were remaining in the ditch—twenty-two in number. The complainant proceeded to remove these stumps and logs mentioned in the Patton report. Later, during the controversy, complainants selected F. M. Patton, the same engineer who had made the investigation on February 6, 1925, and the defendants selected W. H. Stinson, a civil engineer living at Milan, Tennessee, and who had had many years experience in the construction of drainage canals, and these two engineers went upon the ditch, this being about fifteen or sixteen months after the ditch had been completed, and they made the following report:

"To the Honorable Board of said District:

"On this day we in company with the board of directors, have been over and carefully inspected Jones Creek canal, constructed by J. P. Inman about sixteen months ago, and we find on an average two to three feet of muck in the canal.

"We took nineteen cross-sections at various places along the canal, and find the width up to the specifications, and the depth including the muck, is according to profile.

"We beg to report in our estimation the muck in the bottom of the canal is the principal cause of complainant by property owners. Ordinarily the muck disappears after the first or second rain, but in this case there has been no rain since its construction to remove the muck except at the lower end; we, are of opinion that one or two good rains will solve this difficulty. We are of opinion that the contractor is not liable for this condition. Therefore, we recommend that this work be accepted and paid for after the following things have been done."

It appears that some stumps and logs had gotten into the ditch at the time that Patton and Stinson made their inspection, that were not in the ditch when Patton made the first inspection, but the complainant removed these. It further appears that during the construction of this ditch, one of the directors at that time was one Mr. Charlie Jones. He moved from Chester county and was succeeded by one of the defendants. Jones was on the ditch every

day during its construction. He testified that the work was completed according to the contract, with some minor or immaterial exceptions. This witness testified that it was a fine ditch and he did not believe it would overflow any more; that a better ditch was . not needed.

This ditch was three and one-tenth miles long. It appears that practically all of the witnesses agree that the ditch is in good condition towards its mouth; that towards the source is where the complaint lies, and there is also some complaint in regard to what is termed "high places"—that is, that the bottom of the ditch is not loosened to a depth of six feet, and there is hard or unbroken soil which will catch the muck as it undertakes to flow out, and if much of this muck accumulates around one of these high places, it would cause the ditch to overflow.

• We are of opinion, from the whole record, the complainant has made out his case by substantial material evidence, and that the Chancellor was not in error in sustaining complainant's bill, and it results that the first, second and third assignments of error are overruled.

We are of opinion that the complainant carried the preponderance of the evidence in sustaining his contention. These defendants knew the kind of ditch complainant was to dig, and that he was not to take all of the dirt out of the ditch, but was to loosen same to a depth of an average of six feet; and, as said by the Chancellor, the complainant and defendants both were relying upon the elements to finish the ditch, or to wash out the loose dirt, but on account of a scarcity of rains this muck did not move as rapidly as was expected.

We find no error in the Chancellor's decree in ordering the $1,000 of the drainage bonds to be delivered to the Clerk and Master to be delivered to complainant. That was a part of the contract, that he was to get the bonds after he had completed the contract. It results that the fifth, sixth, seventh and eighth assignments of error are overruled.

As to the ninth assignment of error, in regard to parol proof, there is no parol proof introduced to vary the terms of the contract. The proof introduced was to explain the character of the ditch and describe that which had been omitted. The contract was silent as to how the ditch was to be dug, but the parties had agreed as to the manner in which it was to be constructed and the written instrument not stating or describing the manner of construction, then it was competent to prove by parol proof what the contract was. This evidence did not change the terms of the contract, but simply explained it. The ninth assignment of error is overruled.

The tenth, eleventh and twelfth assignments of error seem to make the complaint that the Chancellor based his decree upon the report of the engineers, and that the defendant directors of the drainage ditch had delegated their authority to these engineers. The record does not sustain this contention. The engineers simply made an inspection of the ditch. They were evidently qualified to be the best witnesses that could be obtained to ascertain the fact whether or not the complainant had completed his contract. The directors did not delegate their authority to the engineer in the contract. They simply designated the engineer who was to investigate and report on the estimates of the work, but to save expenses, these directors made their own estimates. We do not find under the tenth or twelfth assignment that these defendants had delegated their authority to the engineer who had been designated as such, to prepare the plans and specifications, etc. The drainage act provides for the selection of an engineer and these defendants in the selection and employment of an engineer did not go beyond the scope of their authority or violate the law.

It results that we find no error in the decree of the Chancellor, his decree is in all things affirmed. The assignments of error are all overruled and disallowed. Defendants and their surety on appeal bond will pay the cost of the cause, including the appeal, and complainant will recover of the defendants and their surety on appeal bond the amount of $1,000, recovered in the lower court, with interest thereon from the date of the rendition of said judgment, for all of which execution will issue.

Heiskell and Senter, JJ., concur.